GLENN E. SMITH
GLENN E. SMITH & ASSOCIATES
216 LONGS PEAK DRIVE
CHEYENNE, WY 82009
Telephone: (307) 635-4912

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 16 2009

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| PAMELA R. GOERTZ, a Wyoming resident, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Civil No. 09CV 23 |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey corporation, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## COMPLAINT

**COMES NOW** the Plaintiff in the above referenced action, by and through her attorney of record, Glenn E. Smith, and for her claims for relief against the Defendant, The Prudential Insurance Company of America, Plaintiff alleges and states as follows:

### PARTIES AND PRINCIPLES TO THE ACTION

1. Plaintiff Pamela R. Goertz (hereinafter "Plaintiff") is a resident of Wheatland, Wyoming. At times relevant to the allegations set forth in this Complaint, Plaintiff was employed by Holme Roberts & Owen, LLP, (hereinafter

"HR&O"), a law firm in Denver, Colorado. As a result, Plaintiff was eligible to participate, and did participate, in an employee benefit plan established by HR&O for the purpose of providing eligible employees with certain welfare benefits, including a group long-term disability insurance plan underwritten by Defendant Prudential Insurance Company of America (hereinafter "Prudential").

2. Prudential is a life and health insurance company incorporated in New Jersey. It is duly licensed by the State of Wyoming as a foreign insurer and, as such is authorized to transact the business of insurance in Wyoming. Effective January 1, 2000, Prudential issued a group disability policy to HR&O for the purpose of providing disability insurance to eligible HR&O employees. Plaintiff was among the HR&O employees who were insured under the Prudential disability policy. Prudential serves as the plan administrator of the HR&O group disability plan.

3. Formed as a limited liability company, HR&O is a large law firm located in Denver, Colorado. At times relevant to the facts alleged in this Complaint, HR&O employed the Plaintiff as a legal secretary. As part of its overall employee benefit plan, HR&O established a long term group disability plan to insure its eligible employees, including the Plaintiff, from the risk of becoming disabled from work.

**JURISDICTION AND VENUE**

4. All claims for relief set forth in the Plaintiff's Complaint are governed by the terms and provisions of the Employers Retirement and Income Security

Act of 1974 ("ERISA"). This action is brought pursuant to 29 U.S.C. §1132(a)(1)(B). The Court has jurisdiction over the claims asserted by the Plaintiffs in this action pursuant to 29 U.S.C. §1132(e)(1).

5. Because the Prudential long-term disability plan was partly administered in this district and the breach of that plan, along with other violations as alleged in this Complaint occurred in this district, venue in this court is proper under 29 U.S.C. §1132(e)(2).

**STANDARD OF REVIEW AND EXHAUSTION OF REMEDIES**

6. The Prudential summary plan description reserves unto Prudential the discretion to interpret the terms of the contract, make factual findings, and determine eligibility for benefits. This language appears sufficient to create an arbitrary and capricious standard of review in this case.

7. However, Prudential is a conflicted fiduciary under the facts and circumstances of this case because it serves as the plan administrator of the Prudential long-term disability plan, with ultimate authority to approve or deny claims, but also stands to benefit financially from denying benefit claims. That conflict, therefore, must be considered as a factor in whether the Plaintiff's denial of benefits was arbitrary and capricious and reduces any deference that may be otherwise accorded under an arbitrary and capricious standard of review.

8. Following the denial of her disability benefit claim by Prudential, Plaintiff filed two administrative appeals in an effort to reverse the denial of her claim, both of which were denied. In the last denial of her appeal dated April 5,

2007, Prudential wrote the following to Plaintiff: "Our decision to again uphold the termination of your claim for LTD benefits is final and cannot be appealed further to Prudential." Thus, Plaintiff has exhausted all administrative remedies available to her in this action.

**STATEMENT OF FACTS RELEVANT TO PLAINTIFF'S CLAIM FOR RELIEF**

9. Plaintiff began working for HR&O as a legal secretary/paralegal in 2000. She has a total of 38 years of experience in the legal field prior to becoming disabled from work.

10. While working in this capacity for HR&O on January 4, 2006, Plaintiff suffered a grand mal seizure. She was taken to the Rose Medical Center in Denver, Colorado and initially diagnosed with vertigo. Previous to her seizure, Plaintiff had long suffered from symptoms of multiple sclerosis, although she was never diagnosed with that disease.

11. Subsequently, on January 21, 2006, Plaintiff was placed on Trileptol, an extremely strong anti-seizure medication, and suffered debilitating side effects that made it impossible for her to even drive to work safely. This same medication, along with other medications subsequently taken by Plaintiff, made it equally impossible for her to work.

12. Plaintiff also had serious issues with weakness in her legs and could not walk a straight line. Her memory was poor and her hand eye coordination was completely abnormal. HR&O placed Plaintiff on medical leave on March 6, 2006, at which time Plaintiff underwent a series of medical tests to

determine the source of her physical problems.  All of these tests were inconclusive.

13. On March 16, 2006 Plaintiff quit her job with HR&O because she could no longer perform her job duties.  At the time she became disabled from work, Plaintiff was legal secretary to three different attorneys.  Her job was very stressful and required a high level of concentration and organizational skill.

14. On March 22, 2006 Plaintiff was switched over to Keppra, a medication prescribed for those suffering from epilepsy.  She was prescribed huge daily doses of 3000 mg per day.  She is still taking this medication at the present time along with other anti-epileptic drugs.

15. After Plaintiff became disabled from work, her physical problems steadily deteriorated.  She suffered from serious, ongoing headaches, inability to engage in cognitive thought, lack of strength in her hands, and inability to walk any significant distance without falling.

16. Plaintiff becomes dizzy and falls at least once a week. She has learned to place her hands on the wall when trying to climb stairs.  She runs into things when she becomes dizzy.  She is confined to bed for two and three days at a time because of her headaches and dizzy spells.  Plaintiff believes it is safer for her to remain in bed because of the ease with which she loses her balance and falls.

17. Because of these debilitating problems, Plaintiff filed a claim for total disability under the Prudential group long-term disability plan on June 22,

2006.  Accompanying her claim for benefits was an attending physician's statement from Plaintiff's neurologist, Dr. Stanley Ginsburg.  He diagnosed Plaintiff as suffering from a seizure disorder and secondary depression and indicated that Plaintiff was no longer able to work at her job.  Her medical impairments were listed as worsening concentration and worsening gait abilities.  Dr. Ginsburg stated that her prognosis for a return to work was "poor" and that Plaintiff should be restricted from driving.

       18.    By letter dated September 6, 2006, Prudential denied Plaintiff's claim for disability benefits.  In denying her claim Prudential acknowledged Plaintiff's grand mal seizure, her abnormal EEG, and an MRI showing diffuse white matter changes on her brain.  Prudential further acknowledged Plaintiff's primary complaints of fatigue, inability to think properly with memory problems, and generalized cognitive problems, but dismissed all of these complaints because Plaintiff was able to drive on occasion, recite her medical history, administer her medications, show up for medical appointments, and make her own financial decisions.  Prudential further acknowledged Dr. Ginsburg's neurological opinion that Plaintiff was unable to return to work as a legal secretary but summarily dismissed his opinion without obtaining its own independent medical exam or functional capacity evaluation.

       19.    In summary, Prudential acknowledged that Plaintiff was totally disabled through April 24, 2006, but stated that Plaintiff's medical records beyond that date did not support impairment to the point that she could not perform her

occupation as a legal secretary. Prudential further stated that the physical exams performed by Plaintiff's doctors did not show that she could not perform her occupation "as the exams for the most part were normal with very limited functional limitation."

20. By letter dated October 26, 2006, Plaintiff filed an administrative appeal contesting Prudential's claim denial. One of the additional documents furnished by Plaintiff in support of her appeal was a "statement" from another of Plaintiff's physicians, Dr. William A. Kubaska, dated September 13, 2006. In this statement Dr. Kubaska indicated that Plaintiff was totally disabled from her job and from any other work. He described her diagnosis as seizure disorder and secondary depression. Dr. Kubaska listed her subjective symptoms as "falls" and his objective findings as an EEG and "temporal focus." He further indicated that he did not expect a fundamental or marked improvement in the future. Plaintiff's medications were listed as Keppra, 2000 mg, Lipitor, Celebrex, Paxil, Klompin, and Requip.

21. Plaintiff further called Prudential's attention to the white matter spots that showed up on Plaintiff's MRI films, along with the concern expressed by Dr. Narotzky, a neurosurgeon who saw Plaintiff in Casper, Wyoming on October 11, 2006, about this condition. Plaintiff further added in her appeal letter: "Every doctor that has examined me and my medical records and films over the last 10 months have told me that they are very concerned about the white matter changed in my brain."

22. In support of her appeal Plaintiff also submitted a Notice of Award of benefits from the Social Security Administration, dated December 19, 2006, establishing that Plaintiff was totally disabled from all gainful employment by that agency as of March 16, 2006. Plaintiff was awarded past due disability benefits and began receiving, and is presently receiving, the sum of $1407.00 from Social Security on a monthly basis as a result of her disability.

23. In response to Plaintiff's administrative appeal and the additional information that she submitted in favor of her claim, including statements from three different physicians that Plaintiff was totally disabled from performing any gainful employment, and in lieu of objectively investigating Plaintiff's new information in support of her claim, Prudential ordered surveillance on the Plaintiff for the purpose of defeating Plaintiff's claim for disability benefits.

24. The surveillance firm hired by Prudential placed Plaintiff under surveillance for four complete days on three different occasions, and in that entire time compiled a two-minute video of Plaintiff engaging in menial tasks that Plaintiff never denied she could perform on one of her good days. The video shows, for example, the Plaintiff pushing a very small amount of snow in a path outside of her sliding glass door so she could let her pets outside. It shows Plaintiff walking around her vehicle to pick up an empty cardboard box that weighed less than a pound and placing it in a dumpster. It showed her stooping over to see if needed repairs had been made to the foundation of her home and adjusting her doormat in front of her door.

25. Plaintiff has always maintained, and has consistently informed her physicians and Prudential, that she has her good days and bad days and that on her good days she is capable of performing the minimal tasks captured on two minutes of video by Prudential. On bad days, however, Plaintiff cannot even get out of bed, as evidenced by the fact that in four entire days Prudential was only able to capture the Plaintiff outside of her home for less than a two minute period of time. The remainder of the time the Plaintiff was, in fact, confined to her home and spent the vast majority of time in bed.

26. In fact, ever since Plaintiff's grand mal seizure in January of 2006, Plaintiff rarely leaves her home and when she does it is usually to buy food, purchase prescriptive drugs, get her mail, or visit her son and daughter-in-law a very short distance from her home.

27. By letter dated March 8, 2007 Plaintiff appealed the denial of her claim a second time. In support of her appeal Plaintiff submitted documentation of a prescription for a wheeled walker and for CPAP from Dr. Ginsburg. She further submitted a new attending physician's statement from Dr. Kubaska, in which he agreed with two other physicians who personally treated Plaintiff that Plaintiff was totally disabled from all work. In her letter of appeal, Plaintiff exhaustively detailed her medical treatment from Dr. Ginsburg, Dr. Corboy, and Dr. Narotzky, along with her mental evaluation by Amy Crockett, Ph.D., to further establish that she is unable to work on a full-time basis at any job for which she may be qualified.

28. In her letter of appeal Plaintiff responded in detail to the video surveillance conducted by Prudential after her claim denial. She thoroughly explained how the video supports her claim for disability and how Prudential twisted and distorted the results of the video in a prejudiced effort to support its claim denial. Plaintiff further explained how she is able to perform some menial tasks on her good days – and that on her bad days she would have been totally unable to leave her home.

29. Plaintiff again reiterated in her second appeal that she continues to experience severe and debilitating headaches and dizziness, that she experiences extreme back pain, that her gait is very shaky and unstable, that she has no strength in her hands, and that she suffers from chronic insomnia.

30. Amy B. Crockett, Ph.D., a psychologist seen by Plaintiff in connection with Plaintiff's claim for Social Security disability benefits, summarized Plaintiff's medical history and physical disability on November 6, 2006 as including tremors, numbness in her extremities, dizziness, weakness, and depression. She was also noted as suffering from anxiety, scoliosis of the spine, and legal blindness in her left eye, among other things. Ms. Crockett continued her summary of Plaintiff's problems as follows:

> Ms. Goertz is a woman who was functioning well until she had a Grand Mal seizure in January of 2006. Since then, she has had problems with dizziness, unsteadiness, and forgetfulness. She has had several tests and has been diagnosed with Epilepsy, obstructive sleep apnea, and restless leg syndrome. She also has scoliosis, which causes pain in her back and legs. She has had a phobic fear of crowds for years and has anxiety attacks several times a week. Her anxiety has worsened over the last several

months and she has been feeling depressed as well. Her sons help her with activities of daily living at this time. She had to quit her job because she could not maintain her responsibilities adequately anymore.

Ms. Goertz has the cognitive ability to learn and retain information for several work-related tasks. Memory skills appear to be adequate for simple tasks, but she described having trouble with more complex ones. She has needed help from her sons to manage her finances, and she has had poor concentration and organization. This would negatively affect her ability to work at this time. Persistence and pace would be lower than average at this time because of the depression, low energy, and headaches. * * *

31.     By letter dated April 5, 2007, Prudential denied Plaintiff's second appeal of her disability claim denial. According to Prudential, Plaintiff did not meet the plan definition of total disability for the following reasons:

(a)     According to Prudential, Plaintiff was observed on surveillance as being able to walk without observable gait abnormalities, stepping up on to a curb carrying items, bending at the waist, climbing stairs, and shoveling her deck.

(b)     According to Prudential, Plaintiff had no functional impairments after March 17, 2006 and her physical examinations were essentially normal. Diagnostic studies were reported as normal except for non-specific MRI findings of diffuse white matter changes. There was no diagnosis confirming seizure disorder, or complaints of numbness, weakness and gait difficulty.

(c)     According to an "external physician reviewer" employed by Prudential, there were no restrictions or limitations regarding Plaintiff's ability to sit, stand, walk, life, carry, reach, and perform hand activities. Prudential's "physician reviewer" never examined Plaintiff, never talked to her, never talked to

her physicians, and may or may not have reviewed all of Plaintiff's medical records.

(d) According to Prudential, Plaintiff's psychological evaluation revealed findings of normal cognitive status except for stated difficulty with complex tasks and sustained concentration, and Plaintiff's complaints to that effect were self-reported and not corroborated by any independent test.

(e) According to Prudential's "physician reviewer," Plaintiff does not suffer from any objective neurological deficit; any mental deficiency, if any, was not shown to be organically caused, according to Prudential.

(f) According to Prudential, Plaintiff's diagnosis of epilepsy was never "confirmed," there has been no definite neurological diagnosis, and "most" of Plaintiff's physical complaints are contrary to what was observed on surveillance.

(g) On second reconsideration, Prudential referred Plaintiff's claim to an unidentified "psychiatrist reviewer" who reviewed the psychological evaluation performed as part of Plaintiff's claim for Social Security disability benefits. He stated that "overall," Plaintiff's records do not confirm significant psychiatric issues, and do not demonstrate global psychological or cognitive impairment from March 17, 2006 forward. He further stated that Plaintiff has not had any neuropsychological testing and that her psychological problems are self-reported and thus unreliable.

(h) According to Prudential, no adverse side effects from medication are listed in Plaintiff's medical records that were made available for review.

(i) According to Prudential, the fact that Plaintiff was found to be totally disabled by the Social Security Administration is not relevant to Plaintiff's claim for disability benefits under the HR&O disability plan because definitions of disability may differ between social security and the plan and there is no way of knowing whether the Social Security disability determination was based on the same information upon which Prudential based its decision.

32. The present suit was filed when Plaintiff was notified by Prudential in its April 5, 2007 upholding Plaintiff's claim denial that Prudential's decision to that effect was final.

**CLAIM FOR RELIEF PURSUANT TO 29 U.S.C. 1132(a)(1)(B)**

Plaintiffs re-allege all facts set forth elsewhere in his Complaint as if fully set forth in her claim for relief and further allege and state as follows:

33. At all times material to the facts alleged in this Complaint, the employee benefit plan that forms the basis for this action was subject to and governed by ERISA.

34. Plaintiff's Claim for Relief is asserted under the provisions of 29 U.S.C. §1132(a)(1)(B), which empowers the beneficiaries of an employee benefit plan, including the Plaintiff, to recover benefits due under the terms of the plan and to enforce their rights under the terms thereof.

35. Plaintiff is entitled to recover benefits due under the terms of the HR&O plan because Prudential acted arbitrarily and capriciously in denying

Plaintiff's disability claim. The arbitrary and capricious denial occurred in numerous ways, including the following:

    (a)    Plaintiff is in fact totally disabled under the HR&O disability plan and has been since January of 2006. In concluding otherwise, Prudential ignored all evidence favoring a finding that Plaintiff was totally disabled, including reports from three different physicians, all stating that Plaintiff was totally disabled from all work, and instead focused solely on evidence it could gather that supported a denial of Plaintiff's claim.

    (b)    Prudential did not obtain its own independent medical examination, or request that Plaintiff undertake a functional capacity evaluation, or attempt to gather any evidence that would support payment of Plaintiff's claim. Instead Prudential relied upon its own "physician reviewer" to perform a "record review" of Plaintiff's condition and furnish reasons to Prudential for denying Plaintiff's claim.

    (c)    Prudential's definition of total disability requires that Plaintiff be unable to perform the material and substantial duties of her regular occupation due to sickness or injury, and after a period of twenty-four months that Plaintiff thereafter be unable to perform the duties of any gainful occupation for which she is reasonably fitted by education, training or experience. Yet at no time did Prudential ever even bother to find out what the material and substantial duties of Plaintiff's regular occupation were to determine if Plaintiff was physically unable to perform these duties.

(d)   Neither did Prudential ever determine the types of jobs that Plaintiff may be reasonably fitted for by education, training, or experience, either through a transferable skills analysis or by any other means.  Thus Prudential denied Plaintiff's disability claim without even knowing what jobs Plaintiff was physically and mentally able to perform.

(e)   Neither did Prudential make any effort to determine whether there were jobs available in Plaintiff's geographical area that she could actually perform, given her physical limitations and restrictions.

(f)   In upholding the denial of Plaintiff's claim, Prudential placed great emphasis on video surveillance that showed nothing more than Plaintiff performing menial tasks that she never denied she could do on her good days. Further Plaintiff was placed under surveillance for four entire days and the best that Prudential could do is come up with two minutes of video showing Plaintiff leaving the house to buy some of the necessities of life, walking into the house, stooping over to check if repairs had been made on the foundation of her house, and using a shovel to push a small amount of snow off her deck so that her pets would be able to get outside.  Contrary to what Prudential says, the video actually supports Plaintiff's claim for disability more so than the denial of that claim because it confirms Plaintiff's contention that she is unable to even leave her house, and in fact seldom does so, except to buy groceries, to sometimes visit her son, and to keep doctor's appointments.

(g) In denying Plaintiff's claim for disability benefits, Prudential focused solely on the absence of objective medical data and clinical diagnoses to support Plaintiff's claim that she is unable to work. Yet there is nothing in the Prudential disability policy that requires Plaintiff to prove her claim by objective means or clinical diagnoses. The policy simply requires that Plaintiff prove she is unable to perform the material duties of her occupation.

(h) Prudential completely ignored Plaintiff's physical complaints and her reasons for not being able to perform her job duties, i.e., severe headaches, dizziness, frequent falls, back pain, lack of concentration, and inability to perform anything but simple mental tasks because of the lack of a neurological diagnosis to explain these symptoms. In fact, Plaintiff was diagnosed with epilepsy and with white matter gliosis on her brain, a medical condition that could easily explain Plaintiff's headaches, dizziness, and unsteady gait that prevent her from being able to work.

(i) Prudential not only ignored that these diagnoses in denying Plaintiff's claim, but denied that a diagnosis of epilepsy had ever been confirmed. Yet Plaintiff's physicians have prescribed massive doses of anti epileptic drugs, including Keppra – drugs that Plaintiff still takes to this day.

(j) Plaintiff has also been clinically and objectively diagnosed, by means of a brain biopsy, as having "white matter gliosis and small vessel disease." This condition is still not well understood by the medical community, but yet is completely consistent with known symptoms reported by the Plaintiff,

both physical and mental.  Yet this objective medical evidence supporting disability was totally ignored by the Prudential.

(k)     As a fiduciary charged with acting solely in the interests of the Plaintiff, Prudential was required to gather and evaluation evidence in support of Plaintiff's claim to the same degree and extent as it was required to gather and evaluate evidence to support a claim denial.  Yet Prudential assumed an adversarial stance with the Plaintiff from the beginning and never had any intention of fairly evaluating Plaintiff's benefit claim.

(l)     Prudential denied Plaintiff a full and fair opportunity to present evidence in favor of Plaintiff's claim by relying on a "psychiatric reviewer" to deny Plaintiff's second appeal without giving the Plaintiff the opportunity to ever review this evidence, rebut this reviewer's findings, or ever seeing his report.

(m)    Prudential denied Plaintiff's disability claim without ever considering whether Plaintiff's physical and mental condition prevented her for performing her job duties, or engage in other work for which she was qualified, on a full time basis, eight hours a day, forty hours a week, 52 weeks out of the year, vacation time and sick leave excepted.  Instead Prudential focused solely on whether Plaintiff was physically able to perform these duties at all without addressing whether Plaintiff could physically do so on a full time basis.  If Plaintiff could work two days a work but was unable to do so the other three days of the week, or if Plaintiff could work two hours a day but not eight hours a day, she would be

every bit as much disabled under the plan definition of total disability as if she was incapacitated in an iron lung.

(n)  In finding that Plaintiff was not totally disabled from work, Prudential totally ignored whether there are even any jobs that an employer would be willing to hire her for, given her history of a seizure disorder, debilitating headaches, dizziness, and prone to falling on the job.

(o)  Prudential recognized in its second appeal decision that Plaintiff was taking prescriptive medications that are known to have side effects that are alone disabling, but refused to consider this as a factor in whether Plaintiff could perform the duties of her job only because none of her physicians happened to mention the effect of prescription drugs on Plaintiff's ability to work in her medical records.

(p)  Prudential totally ignored the determination by the Social Security Administration that Plaintiff is in fact totally disabled from all work.  Even though disability decisions made by Social Security are not binding upon Prudential, any claim administrator who took its duty as a fiduciary to act in the sole interest of plan participants seriously would have at least evaluated the Social Security decision and set forth reasons why that a similar decision should not obtain under the HR&O plan definition of total disability.

36.  For all of the above reasons, and for any additional reasons revealed by the Prudential administrative record, Prudential's decision to deny disability benefits to the Plaintiff was arbitrary and capricious.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for a judgment against Prudential for all past and future benefits due the Plaintiff under the HR&O plan, including prejudgment interest and costs as allowed by law, reasonable attorney's fees as provided under 29 U.S.C. §1132(g)(1), and all other damages, remedies and forms of equitable relief allowable under 29 U.S.C. §1001 *et. seq.*

**DATED** this 15th day of October, 2009,

Respectfully submitted,

Pamela R. Goertz.
Plaintiff

BY: /s/ Glenn E. Smith

Glenn E. Smith
Glenn E. Smith & Associates
216 Longs Peak Drive
Cheyenne, Wyoming 82009
(307) 635-4912

Attorney for Plaintiff